UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:14-cr-60-HSM-SKL |
| | ) | |
| HERSHELL CHRISMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT & RECOMMENDATION

Before the Court is a motion to suppress filed by Defendant Hershell Chrisman ("Defendant") [Doc. 18], in which Defendant seeks to suppress all evidence resulting from or traceable to his arrest, including the search of his person and the surrounding area and his statements to law enforcement officials. Plaintiff United States of America ("the government") filed a response in opposition [Doc. 25]. The motion to suppress was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b) [Doc. 20].

An evidentiary hearing on the motion to suppress was held on November 14, 2014. In its response and during the hearing, the government acknowledged that it will not attempt to use in its case-in-chief certain evidence that Defendant was seeking to suppress. At the conclusion of the hearing, Defendant acknowledged that, given the concession of the government not to use certain evidence and the testimony presented during the hearing, the only aspect of Defendant's motion to suppress evidence remaining for resolution by the Court is Defendant's request to suppress a non-Mirandized statement allegedly made by Defendant that the government contends was spontaneous and not the result of custodial interrogation.

After fully considering the evidence and argument, I **FIND** the remaining statement at

issue was not made in response to custodial interrogation. Thus, I **RECOMMEND** that Defendant's motion to suppress be **DENIED**.

I. **FACTS**

During the evidentiary hearing, the government offered the testimony of McMinn County Sheriff's Deputy Douglas Benton, the only witness presented during the hearing. The largely uncontested and unchallenged testimony of Deputy Benton that remains relevant to the sole issue for Court resolution is briefly summarized below.

On the afternoon of September 16, 2013, Deputy Benton and Sergeant Mike Hays of the McMinn County Sheriff's Department were investigating another matter when they went to a residence at 198 County Road 128 looking for a subject with an outstanding arrest warrant. This residence was known to the officers, and they had executed warrants on other wanted persons at the residence in the past. As a result, the officers were familiar with the layout of the residence and the property.

As Deputy Benton watched the residence from a nearby field where he was obscured by the tree line, he observed Defendant on the back porch relieving himself. Deputy Benton immediately recognized Defendant and knew there was an outstanding state warrant for Defendant's arrest for violation of probation.[1] Although Officer Benton had been actively looking for Defendant to execute the arrest warrant, he had no idea Defendant would be present at the residence.

After observing Defendant go back into the residence, Deputy Benton approached the main entrance door and knocked. When an unknown individual answered the door, Deputy Benton asked where "Pookie" (the nickname for Defendant) was. When the individual responded that he

---

[1] The warrant was admitted as government's exhibit 1.

issue was not made in response to custodial interrogation. Thus, I **RECOMMEND** that Defendant's motion to suppress be **DENIED**.

I. **FACTS**

During the evidentiary hearing, the government offered the testimony of McMinn County Sheriff's Deputy Douglas Benton, the only witness presented during the hearing. The largely uncontested and unchallenged testimony of Deputy Benton that remains relevant to the sole issue for Court resolution is briefly summarized below.

On the afternoon of September 16, 2013, Deputy Benton and Sergeant Mike Hays of the McMinn County Sheriff's Department were investigating another matter when they went to a residence at 198 County Road 128 looking for a subject with an outstanding arrest warrant. This residence was known to the officers, and they had executed warrants on other wanted persons at the residence in the past. As a result, the officers were familiar with the layout of the residence and the property.

As Deputy Benton watched the residence from a nearby field where he was obscured by the tree line, he observed Defendant on the back porch relieving himself. Deputy Benton immediately recognized Defendant and knew there was an outstanding state warrant for Defendant's arrest for violation of probation.[1] Although Officer Benton had been actively looking for Defendant to execute the arrest warrant, he had no idea Defendant would be present at the residence.

After observing Defendant go back into the residence, Deputy Benton approached the main entrance door and knocked. When an unknown individual answered the door, Deputy Benton asked where "Pookie" (the nickname for Defendant) was. When the individual responded that he

---

[1] The warrant was admitted as government's exhibit 1.

did not know "Pookie," Deputy Benton explained he was referring to the man who had just been on the back porch. In response, the individual indicated Defendant was in the bedroom.

Deputy Benton, who had by then been joined at the entranceway by Sergeant Hays, entered the residence to apprehend Defendant. They did not seek consent or permission to enter because they had a warrant for Defendant's arrest. They found Defendant lying in a bed in a makeshift bedroom. Deputy Benton instructed Defendant to get up and interlace his fingers over his head because he was under arrest and Defendant cooperatively did so. Deputy Benton frisked Defendant incident to arrest and felt a magazine for a firearm in one of Defendant's front pants pockets. Deputy Benton removed the magazine and discovered it was loaded.

Deputy Benton, who had known Defendant for many years, was aware that Defendant had a prior felony conviction and was also aware that Defendant had suffered grievous injuries in a recent motorcycle accident. Deputy Benton described the arrest encounter as courteous and friendly, with no possibility that Defendant could flee due to his injuries, although Defendant had fled from arrest on at least one past occasion.

Sergeant Hays, who was in the makeshift bedroom with Defendant and Deputy Benton, spotted a handgun in the next room about nine to 12 feet away from Defendant and informed Deputy Benton he had spotted a gun. For officer safety reasons, it is standard police practice to inform fellow officers when a gun in seen in plain view. In response to hearing Sergeant Hays comment to Deputy Benton that he had seen a gun, Defendant spontaneously stated the magazine found in his pocket did not fit the gun as the magazine would have to be filed to fit the gun.[2]

The magazine in Defendant's pocket had been "filed." The officers found that the gun on the table had a different loaded magazine in it. Defendant denied that the gun was his.

---

[2] This is the remaining statement at issue in the motion to suppress.

Thereafter, Defendant was asked if his fingerprints would be on the gun and Defendant responded that his fingerprints would be on it because he had picked up and handled the gun.[3]

On cross examination, Deputy Benton was asked, "With regard to the discussions that you previously talked about [on direct examination] about the clip, you pulled the clip out. Who was the first person to say something about the clip?" Officer Benton responded, "I don't recall if I said anything or if [Defendant] said anything initially. I don't know who spoke first. I really don't recall."

## II. ANALYSIS

As noted above, based on the refinement of Defendant's motion during the hearing, the only remaining issue for resolution by the Court with respect to the suppression of evidence is the statement made by Defendant to the effect that the magazine in his pocket had to be filed to fit the gun. Defendant argues this alleged self-incriminating statement was allegedly made prior to receiving *Miranda* warnings and without waiver of his *Miranda* rights. The government does not dispute the lack of *Miranda* warnings; instead, it argues Defendant was not being interrogated when he volunteered this incriminating statement and, thus, *Miranda* warnings and a waiver were not required.

The Fifth Amendment provides that a defendant cannot "be compelled in any criminal case to be a witness against himself." *United States v. Protsman*, 74 F. App'x 529, 532 (6th Cir. 2003) (citing U.S. Const. amend. V.). In order to protect a suspect's constitutional right against compelled self-incrimination, the Supreme Court gave birth to the now familiar "*Miranda* rights" and "*Miranda* warnings" in *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). As a result, no criminal suspect may be subjected to custodial interrogation without first being advised of his

---

[3] The government acknowledged it will not attempt to introduce this non-Mirandized, non-spontaneous statement or the property receipts signed by Defendant in its case-in-chief.

rights under *Miranda*. *Stansbury v. California*, 511 U.S. 318, 322 (1994). "To ensure compliance with this rule, incriminating statements elicited during custodial interrogation prior to *Miranda* warnings cannot be admitted at trial." *United States v. Malcolm*, 435 F. App'x 417, 420 (6th Cir. 2011) (citation omitted); *see also Hoffner v. Bradshaw*, 622 F.3d 487, 511 (6th Cir. 2010) (holding the requirement to give *Miranda* warnings becomes applicable only when a person is subject to custodial interrogation). That Defendant was in custody is not in dispute.

With respect to the issue of interrogation, the Supreme Court explained in *Rhode Island v. Innis*, "*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. . . . [T]he definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." 446 U.S. 291, 300-02 (1980); *see also United States v. Collins*, 683 F.3d 697, 703 (6th Cir. 2012) ("'[T]he term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" (alteration in original) (quoting *Innis*, 446 U.S. at 300-01)); *United States v. Chalmers*, 554 F. App'x 440, 446 (6th Cir. 2014) (holding "[v]olunteered statements of any kind are not barred by the Fifth Amendment.") (quoting *Miranda*, 384 U.S. at 478)).

Based upon the evidence, I conclude Defendant's alleged incriminating statement about the magazine not fitting the gun unless it was filed was not the result of express questioning, i.e., an "interrogation," by either officer present. After considering Officer Benton's demeanor, appearance, mannerisms, interest, bias, and all aspects of his testimony, I **FIND** Officer Benton to be credible. I also **FIND** the evidence demonstrates Defendant was not subjected to

interrogation. The evidence proves Defendant merely volunteered the statement upon hearing Sergeant Hays report he spotted a gun, and the cross examination did not establish otherwise or call into doubt Officer Benton's testimony on this critical point.[4] In communicating with each other about the presence of a gun in plain view, the officers should not have known they were reasonably likely to elicit an incriminating response from Defendant. Accordingly, I **FIND** Defendant was not interrogated for purposes of *Miranda*.

## III. CONCLUSION

For the reasons stated above, I **RECOMMEND**[5] that Defendant's motion to suppress [Doc. 18] be **DENIED** and that the government be held to its concessions concerning the evidence it would not seek to use in its case-in-chief.

> s/ *Susan K. Lee*
> SUSAN K. LEE
> UNITED STATES MAGISTRATE JUDGE

---

[4] The Fourth Amendment does not require suppression of physical evidence discovered as a result of a non-Mirandized, but *voluntary*, statement. *United States v. Patane*, 542 U.S. 630, 639 (2004) (holding a failure to give a *Miranda* warning does not require the suppression of reliable, nontestimonial physical evidence derived from a voluntary but unwarned statement); *United States v. Bradley*, 163 F. App'x 353, 357 (6th Cir. 2005) ("[T]he 'fruit of the poisonous tree' doctrine does not apply to physical evidence seized as a result of a *Miranda* violation."). Defendant does not contend his statement was involuntary or coerced.

[5] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).